United States Court of Appeals for the Ninth Circuit is now in session. Thank you. Good morning. I'm Judge Gould and I'm presiding today and delighted to be sitting with my colleagues, Judge Bennett and Judge Nelson. We have a fairly full docket today. So if the advocates for the appellant are able to stop before they use all their time up, then save some for rebuttal. That will be helpful. However, if you're in a jam and need a few more minutes, just ask me and I'll provide them to you as sort of a pandemic bonus. I would also be remiss if I didn't say that Judge Bennett, Judge Nelson, Judge Gould, Judge Nelson, we really appreciate all the lawyers braving the pandemic to appear remotely. We couldn't get our work done without your advocacy and we appreciate it. So we'll proceed to the first case on our docket today for argument, which is United States v. Darrel King and the case is the defendant, the appellant, Mr. King and counsel is Eric Babcock. Right then for the appellee, United States, we've got Mr. Matthew, you pronounce it Yelovich? Yes, that's correct, Your Honor. Great. Okay. Well, I often get pronunciations wrong, but then I got it right this time. So without further ado, we'll proceed. The case is set for 10 minutes per side. So we'll let Mr. Babcock start off the arguments. Thank you, Your Honor. May it please the court. I represent appellant Darrell King. I would like to reserve two minutes for rebuttal. I'll try to remind you. Mr. King has been in custody now since 1980. Next month will have been 42 years since he was arrested. He is among the oldest of inmates in the federal prison system. Approximately 2.8% of federal inmates are 65 or older. He is 78. I don't know what percentage that puts him in, but he's definitely one of the more elderly inmates. Until three years ago, before the First Step Act, only the Bureau of Prisons could file a motion for compassionate release with the court. Congress changed that. With the First Step Act, inmates have to give the Bureau of Prisons the first chance now, but if the Bureau of Prisons refuses to file a compassionate release motion, inmates may now file their own motion with the court and ask for release. The government would read the statute to conclude that Congress intended to allow elderly and infirm inmates to petition the courts, but excluded the most elderly and the most infirm inmates from that ability. The most elderly and the most infirm, but those who are still subject to the jurisdiction of the Parole Commission, right? Under the government's reading of the statute, that's correct. Well, I mean, you're not you're not arguing that pre-sentencing Reform Act inmates who are still in custody aren't still subject to being granted or denied parole, are you? No, of course not. Nothing in the compassionate release statute, as amended by the First Step Act, is inconsistent with so-called the so-called OBOS system, the pre-1987 cases, which the U.S. Parole Commission still administers and decides. So Mr. Babcock, to follow up on Judge Bennett's question, if in fact, your client could be paroled, then how can it be said that the statutory distinction based on the date of conviction is irrational? Because the most elderly inmates are those who were whose offenses occurred before 1987. But that's a policy argument that has, I mean, that it seems unmoored from the statutory language. I mean, yeah. Why wouldn't we look to the statutory language? Why would we take your argument over the statutory language? Well, I think you I think you should follow the statutory language and the statutory language of the First Step Act supports that. And it supports my reading. There was roughly 35 sections of the First Step Act. It's about 55 pages long. There's only one section that specifically addresses whether certain provisions apply to offenses before 1987. And it excludes them. A different section of the First Step Act says, this subdivision does not apply to offenses that occurred before November 1st, 1987. There's no language in the rest of the statute saying that it doesn't apply to offenses before 1987. When Congress specifically carves out one section, one addresses an issue in one section of the statute, it should be presumed to have acted intentionally and purposefully. And and the strong implication of that is the rest of the statute does apply to offenses that occurred before 1987. And and your your position is that the various statutory enactments cited by the government, like public law 100-182, the U.S. Reform Act, continuing to apply to those sentenced under it, your view is basically those are all irrelevant and trumped by the words you just read from the First Step Act. Do I have your argument correct? It's not that they're irrelevant, but the point is they're not inconsistent. There's nothing, nothing inconsistent with Congress saying offenders whose crimes occurred more than 35 years ago can apply for compassionate release. If they're not, if they're not, if they're not granted compassionate release by the courts, they're still subject to the parole system. They're still subject to all the other, all the other old law provisions. There's nothing in amended section 35-82 that creates any sort of conflict with the old law system. It's. If if if the government were correct, your client would still have the opportunity to go to the Bureau of Prisons to seek compassionate relief and get them to seek compassionate release for him. Is that correct? He would have that opportunity in, in theory, but in reality, it's, it's not really a remedy. Before the- Do you know how often that the Bureau of Prisons has sought compassionate release after 4205G was passed? I know that in the, in 2019, the Bureau of Prisons recommended compassionate release in one in a thousand cases. Not 1%, but 0.1%. In 2019, they recommended compassionate release in 55 cases. And in the first year after the COVID pandemic started, they recommended compassionate release in a total of 36 cases. 36 cases out of more than 150,000 inmates. So even though it isn't called compassionate release, the factors that, say, a court would look at in determining compassionate release are at the very least similar to the types of things the parole commission can look at in deciding whether to parole an inmate. Correct? They are. But in Mr. King's case, old law, parole is of no assistance because under the old law, you have to serve at least one third of your term before you can be paroled. My client will be well into his 90s at that point. So how many, how many years from now will it be before he serves a third? Another 13 years. Because as the court knows, he wasn't brought into federal custody until about two years ago. Because of the state, because of the state's sentence. That's correct. So, and under Bureau of Prisons, I believe the Bureau of Prisons policy is that they won't even recommend compassionate release for elderly and medically infirm inmates until they've served 50% of their sentence, in which case he would be 98 or 99 years old. Which is the whole reason the Congress amended the compassionate release system in the first step back because the Bureau of Prisons almost never recommended it. Since given the chance, courts have granted compassionate release and 20%, 20% of the motions filed in the courts, but they've never done it. They've never, no courts ever applied it to a sentence that was imposed for a crime that was committed prior to 1987, have they? Not that I'm aware of. That's correct. Counsel, did you want to save time for, you're under two minutes. And I will, I will wait and see what Mr. Yellovich has to say. Then for planning purposes, we'll give you extra time so you can have your full plan, two minutes or so. Thank you, Your Honor. Okay. So Mr. Yellovich. Good morning. And may it please the court, Matthew Yellovich on behalf of the United States. This court should affirm because the plain text that Congress wrote, read in whole and in context provides that the Sentencing Reform Act of 1984 applies only to offenses committed after November 1st, 1987. This defendant's offense was committed before November 1st, 1987, and therefore the Sentencing Reform Act, including section 3582 does not apply to his sentence. Every court to have looked at this statutory scheme has read it that same way. This court should do the same and affirm. I'm happy to answer any questions the court may have, or else I'll address some of the points raised by my friend in the opening argument. I'm interested in, I mean, I think you've got the stronger argument on the statutory text, but he does, Mr. King seems to be in a little bit of a limbo position. He, is it true that the Bureau of Prisons have as a policy that you wouldn't be eligible for compassionate release until you've served 50% of your term? So your Honor, that's not in the record. And that's not my understanding of the Bureau of Prisons policy on compassionate release. I will also say just on the sort of limbo that this defendant may be in, I would offer a few points. The first is obviously this court and the Supreme Court have repeatedly emphasized that even harsh results don't allow departure from the statutory text. But here Congress has not left this defendant without recourse or this class of defendants without recourse. Obviously, this class of defendants has access to parole, which is an enormous boon compared to new law defendants. And if that proves unhelpful because of the nature of their offense, like this defendant, then they have section 4205G, which is the compassionate release statute that the Bureau of Prisons can move under. And beyond that, the Bureau of Prisons can place defendants like this on home confinement under section 3621B, which Bureau of Prisons has sole discretion over where someone serves their sentence, which could be in their home for someone in a particularly dire situation. In addition to that, of course, as Judge Easterbrook pointed out in the Seventh Circuit's opinion in Jackson, this defendant, if he's dissatisfied with all of those remedies or finds himself without the relief that he wishes he had, can, of course, seek commutation or pardon from the executive. But the role of the court is not to soften the statutory language so as to allow relief for this individual. The final point I would offer on this is this defendant may be in a particularly difficult situation because of the nature of his two offenses. I mean, he committed murder, which is why he was sentenced to such a lengthy term in the state court. But he also separately ran a continuing criminal enterprise, pushing heroin on the streets of San Francisco, which is why he was subject to a separate federal sentence that was lengthy as well. So he's only just begun serving that sentence for, again, separate conduct from the state murder offense. And while that means that he's not subject to parole for some time, that's a result of his own conduct, not a result of any undue harshness from the sentencing regime. So that would be my answer to your question. I would also point to some of the questions that the panel had for the opening argument. One was Judge Bennett asked about the parole commission's factors and how they line up with compassionate release. I would just offer, in addition, that the defendant, in order to get parole, doesn't have to establish extraordinary and compelling reasons, a way that a defendant has to show for compassionate release. So in many ways, parole is a more favorable system to someone being released early compared to the showing that they have to make under the compassionate release statute, section 3582. But you would agree that he's not eligible for parole until he's going to be in his 80s? I believe, actually, he won't be eligible until he's 91, if the defense calculation is correct, which I have no reason to doubt. But again, that's a result of his own conduct, and I don't think it allows the court to change the statutory language, which is quite clear. This court has repeatedly emphasized that harsh results are not the same as absurd results, and there's nothing absurd about Congress giving more access to compassionate release to inmates that have less access to parole, or no access to parole, I should say, because new law defendants have no parole commission access at all. And so the statutory scheme is, the plain language is not absurd. It should be enforced as written. I would just respond to two other points that my friend made. First is the phrase, in any case, which appears in section 3582. Obviously, that phrase has been in section 3582 since it was enacted as a part of the Sentencing Reform Act of 1984. So it can't bear the weight that my friend is placing on it by saying that Congress, in the First Step Act in 2018, obliterated this longstanding old law and new law distinction using text that had existed from the get-go. And the second point I would make on that text is that Congress didn't stop writing laws after writing, in any case, in section 3582. Instead, it engaged in a series of amendments to the Sentencing Reform Act, culminating in section 2A of the Sentencing Act of 1987, that provided that explicit non-retroactivity bar for the entire act. So, in any case, has to be read in the context of the fact that Congress later said none of the Sentencing Reform Act of 1984 could apply to offenses committed before its effective date. And then the final point I would offer is the statutory language that my friend points to in the First Step Act, where Congress was explicit about the continuing vitality of this old law, new law distinction. That's section 102B3 of the First Step Act. It's an amendment to section 3624. Judge Easterbrook, in the opinion, in the Seventh Circuit's opinion, and Jackson has quite a persuasive rejection of this argument, which is that provision of the First Step Act actually had language that would expand section 3624 to all offenses committed before, on, or after the effective date of the amendment. So, of course, Congress had to add a clause cabining that to make clear that it was not trying to disrupt the long-standing old law, new law distinction by writing this transitional language. And so, for that reason, and in addition to the fact that that particular statute always has transitional timing language, as it's been amended over the years, the defendant's reliance on it is misplaced. If there are no further questions, the government would urge that this court join every court to have decided this issue and affirm. Okay, I have no questions. And Judge Bennett, Judge Nelson, any questions? Okay, no questions. Thank you, counsel. Thank you. Mr. Babcock gets rebuttal now. We'll give him the full two minutes that he had planned. Thank you, Your Honor. I do think, I concede that the Seventh Circuit has ruled otherwise on this issue, but I don't see, I do think that decision was incorrectly decided, particularly as it relates to how the First Step Act addressed pre-1987 offenses in one section of the statute and didn't address it in the Compassionate Release section. I think that supports our position. And obviously, the whole purpose of the First Step, the Compassionate Release provision, the First Step Act, was to give inmates access to the courts. And for extraordinary and compelling reasons to ask for a Compassionate Release. My client has extraordinary and compelling reasons, but Judge Seaborg ruled that he couldn't even address those issues because he didn't have jurisdiction. I don't think that was the intent of the First Step Act. I think that's an absurd result. And this court can read the statute in a way that does not reach an absurd result, does not conflict with the parole system that was in place for pre-1987 cases. That's all I have, unless the court has further questions. Thank you, Mr. Babcock. Thank you, Your Honor. Hearing no questions, we'll thank counsel on both sides of the case. For their advocacy, and the case shall now be submitted.
judges: GOULD, BENNETT, NELSON